**SCANNED**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**FILED**
OCT 0 3 2005
CLERK, U.S. DISTRICT COURT
WST. DIST. OF PENNSYLV.

| | |
|---|---|
| FREDERICK H. BANKS,<br>DON RAOUL HOUGH,<br>JAMES A. THOMAS,<br>KEITH MAYDAK,<br>    Plaintiffs,<br><br>v.<br><br>COUNTY OF ALLEGHENY,<br>PENNSYLVANIA; ALLEGHENY<br>CORRECTIONAL HEALTH SERVICES,<br>INC.; RAMON RUSTIN; CALVIN<br>LIGHTFOOT; FRED ROSEMEYER;<br>BRUCE DIXON; and DAN ONORATO<br>DANA PHILLIPS,<br>    Defendants. | Civil Action No. 05-781<br>Judge Standish<br>Magistrate Judge Hay<br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

AND NOW COMES Frederick H. Banks, Dan Raoul Hough, and James A. Thomas ("Plaintiffs"), the Plaintiffs herein, and for their Complaint aver and allege that: AND COMES NOW Plaintiff Keith Maydak together ("Plaintiffs") and avers;

**parties**

1. The Plaintiffs are Frederick H. Banks, an individual, Don Raoul Hough, an individual, and James A. Thomas, an individual who are inmates at the Allegheny County Jail.

2. The Defendants are the County of Allegheny, Pennsylvania, a municipal corporation, Allegheny Correctional Health Services, Inc., a corporation, Ramon Rustin, an individual and Warden of the Allegheny County Jail, Calvin Lightfoot, an individual and former Warden of the Allegheny County Jail, Fred Rosemeyer, an individual and former interim Warden of the

Allegheny County Jail, Bruce Dixon, an individual and Allegheny County Health Director, and Dan Onorato, an individual and Allegheny County Chief Executive ("Defendants"). The Defendants implemented procedures at the Allegheny County Jail that caused damage to the Plaintiffs.

### administrative remedies

3. The Plaintiffs exhausted their administrative remedies by filing complaints with the Unit Manager, Warden, and County Oversight Board. They did not receive any written responses to their remedies.

### Part A – Overcrowded Conditions that are Unsanitary

4. The Defendants policy is to discourage treatment; a sign on the wall tells inmates that they must pay for medical care.

5. The shower walls are painted bricks and cannot be cleaned.

6. Prison officials make inmates paint over mold, but the paint peels off within days.

7. Water lays outside the shower because of drainage problems.

8. Inmates do not receive socks and underwear upon arrival.

9. Inmates on intake units are not authorized to wash their clothes and they cannot buy hygiene items.

10. The tabletops are peeling off and a dirty stained surface is present.

11. Inmates are not given disinfectant for cleaning.

12. Inmates at one time or another receive a filthy green sponge to sleep on.

13. Inmates receive only one towel, so it stays wet all the time.

14. Inmates must pay $8.00 for a laundry bag or their towel and underwear are not washed.

15. There are no paper towels for cleaning.

16. Inmates receive one roll of toilet paper per week and do not receive extra even when they are sick.

17. Arbitrary strip searches during "shakedowns" leave inmates entire body exposed to MRSA.

18. Strip searches occur without any suspicion, warning, or any valid penological purpose and staff do not use gloves. Consequently, since staff travels from pod to pod, they can transport with them MRSA and other diseases which are then transferred to inmates.

19. A single mop serves 95 inmates.

20. Inmate food handlers are issued thin plastic gloves which do not protect the food from viruses.

## Count I – Constitutional Violations

21. Paragraphs 1 through 20 are hereby incorporated by reference and are realleged as if fully set forth again.

22. By subjecting the Plaintiffs to the overcrowded conditions cited above, which occur because of the Defendants' official and personal policies and procedures, the Defendants infringed upon the Plaintiffs' rights to due process, and to be free from cruel and unusual punishment. The Defendants' actions were willful, knowing, and intentional.

23. Because the Plaintiffs have been subjected to the overcrowded conditions that are unsanitary for over 60 months collectively, and most likely will be for another 22 months, the Defendants policies damaged them and they are entitled to damages pursuant to 42 USC §1983 in the amount of $650,000.00 each and punitive damages in the amount of $1,300,000.00 totaling $5,850,000.00.

## Part B – Overcrowded Conditions Leading to Staphylococcus Aureus and MRSA

24. Recently, the inmates learned of the deaths of two women at the Allegheny County Jail as a result of MRSA. Newspaper accounts show the defendants' making jokes about inmates stealing underwear, and County Health Officials challenging the veracity of inmate complaints regarding the prison conditions.

25. On April 18, 2005, jail officials attempted to push the blame onto inmates by imposing "mandatory" showering on Mondays, Wednesdays, and Fridays in the morning.

26. This "solution" is absurd since most inmates shower every day and the bulk showering increased the hygiene problem since the water accumulates outside the area because of inadequate drainage and peeling paint.

27. Inmates are not being provided any information about MRSA or what to look for.

28. Inmates are not being given tests for MRSA despite having suspicious lesions. Medical personnel "slough off" the lesions as "probably" being "spider bites," a fungus, pimples, ringworm, or other ambiguous retorts.

29. Nurses who are not licensed to practice medicine are tasked with functions that should be assigned to a physician or physician's assistant.

30. The inmate workers are not given sufficient cleaning supplies.

31. Inmates have extremely limited access to cleaning supplies.

32. A single mop is present for 95 people. It is passed from room to room. It smells like mold and leaves a stench in the air. The same water is used for each room because of limitations on chemicals.

33. Inmates are not provided clean rags or paper towels for cleaning.

34. A single toilet brush serves 95 people.

35. The washing machine leaks (probably because staff use a 20 pound chain to lock the door).

36. The ventilation system is not being maintained. In some rooms, no air circulates. In others, so much air comes out that it must be covered as it blows a virtual "bird bath" in germs.

37. Many of the showers do not work at all, and no plans are in place to repair them.

38. Many tables do not have tops (they peeled off). These tables cannot be cleaned since rigid wood is showing. The broken tables must be repaired.

39. Some toilets shut off for one hour if flushed more than once. As a result, feces and urine lays in the bowl.

40. The lockers are rusting out making cleaning difficult.

41. Inmates cannot buy the products they need to cut their nails or floss their teeth.

42. Inmates are not issued underclothes by the jail upon arrival.

43. Inmates receive a single towel that stays wet all the time (because it is never given a chance to dry). It can be washed only if the inmate has a laundry bag.

44. The unit laundry machine, which just recently began working again, is packed full of laundry bags, yet only a small amount of soap is used. Similarly, the dryer is overfilled and the clothes are returned wet.

45. Only one roll of (500 pieces) toilet paper is issued to each inmate per week. The paper must be used for everything including runny noses, spills, cleaning the single spoon and cup, and use of the toilet. Even when inmates are ill, they cannot secure additional paper.

46. Inmates are being refused access to their medical records, but see 28 Pa.Code 563.11, and cannot learn about their conditions. Furthermore, when given medication, inmates are disallowed access to the informational brochure contained therein.

47. Inmates are provided a dirty green sponge to sleep on. The inmates with plastic covered mattresses noticed cracking from the age of the mattress. Prison officials are not replacing worn mattresses.

48. Inmates are given a single sheet and a single blanket. Because of this, most inmates sleep in their uniform to keep warm. Common sense dictates that two sheets be provided since one must wrap the mattress.

49. Inmates are given pillows and they must sleep with their face directly on the dirty green sponge.

50. A sign remains on the wall claiming that inmates are charged $2.00 for sick call and $3.00 to see a doctor. If this is not the case, inmates need to be informed.

51. When new inmates arrive, they are placed for several weeks on a classification unit (4A or 4B). These inmates cannot buy hygiene items or wash their clothes. They cannot buy shampoo, deodorant, shower shoes, toothpaste, etc. After they are moved to a normal unit, they must wait until commissary day to buy hygiene.

### Count II – Constitutional Violations

52. Paragraphs 1 through 51 are hereby incorporated by reference and are realleged as if fully set forth again.

53. By subjecting the Plaintiffs to the overcrowded conditions leading to Staphylococcus Aureus and MRSA, a deadly disease cited above which occur because of the Defendants' official and personal policies and procedures, the

Defendants infringed upon the Plaintiffs' rights to due process, and to be free from cruel and unusual punishment. The Defendants actions were willful, knowing, and intentional.

54. Because the Plaintiffs have been subjected to the overcrowded conditions leading to Staphylococcus Aureus and MRSA for over 60 months collectively and most likely will be for another 20 months, the Defendants' policies damaged them and they are entitled to damages pursuant to 42 USC §1983 in the amount of $650,000.00 each and punitive damages in the amount of $1,300,000.00 each totaling $5,850,000.00.

## Count III – Constitutional Violations – Negligence

55. Paragraphs 1 through 54 are hereby incorporated by reference and are realleged as if fully set forth again.

56. The Defendants owe the Plaintiffs a duty of due care to test for diseases such as MRSA and to keep them from harm.

57. During 2005 or earlier, the Defendants breached their duty of due care when its agents failed to inform the Plaintiffs about MRSA and how to stay safe from contracting the disease and authorizing policies that attribute to outbreaks not prevent them.

58. The Defendants' policies damaged the Plaintiffs in that they are covered with lesions and do not know if they have MRSA or not.

59. As such, the Defendants are liable to the Plaintiffs for their negligent actions that caused a staph and MRSA outbreak in the amount of $925,000.00 each totaling $3,700,000.00.

### additional parties

59a The Plaintiff is Keith Maydak, an individual and former inmate at the Allegheny County Jail. Together with the other Plaintiffs ("Plaintiffs") The Defendant is Dana Phillips, an individual and assistant health director in charge of the Allegheny County Jail medical department. Together with the other defendants ("Defendants").

### COUNT IV - CONSTITUTIONAL VIOLATIONS

60. paragraphs 1 through 59a are hereby incorporated by reference and realleged as if fully set forth again.

### Deliberate Indifference

61. During September of 2005 plaintiff Frederick H. Banks ("Banks") contracted MRSA in the form of a large boil between his eyes and his forhead.

62. Banks immediately put in a medical slip, finally he was sent to medical a full day later.

63. The medical personel informed Banks that he did indeed have staph and not to touch it as it would "blow up really big".

64. The "docter" told him that she had no idea what strain of the virus it was and when Banks asked for testing she told him that they are not authorized to test.

65. Banks informed the docter that he was allergic to peniciliam. The docter proscribed doxcycline, told him to take two pills daily and return to see her if the boil had not gone away in ten days.

66. Banks later learned after ingesting all of the pills that doxcycline is a form of penicilian. Banks suffered sever heardaches, diziness, and heatflashes, couldn't sleep at night, hallucinations, hives, and swollen glands during the material times due to the proscribed medication.

67. Seventeen days later the MRSA infection remains in the form of a swollen boil and no other treatment or testing has been offered to him even though he has put in several medical slips and demanded it.

68. Plaintiffs after conducting an investigation into defendants backgrounds received reliable information that defendant dana phillips, head of the medical department at the allegheny county jail is not qualified for the position and is not a medical docter but infact has a degree in management, but has been treating and directing treatment of inmates for illnesses.

69. defendants implemented a policy of deliberate indifference to not test or diagnose inmates because the thought in their mind is that if MRSA and other diseases are diagnosed then they are liable.

70. this defacto policy implemented by the defendants shows their diabolical intent to deprive inmates of medical care and clearly shows defendants blatent disregard for human life and runs contrary to the constitutional doctrine of the right to be free from cruel and unusal punishment and considering that at least two inmates have died from defendants negligent actions and many more have contracted MRSA and staph including plaintiff Banks, defendants personal and official policies expose the defendants reckless disregard for plaintiffs well being. In fact defendants policies amounted to a conspiracy of silence.

71. By subjecting plaintiffs to the above cited constitutional violations which occur because of the defendants official and personal policies and procedures, the defendants infringed upon the plaintiffs rights to due process and to be free from cruel and unusual punishment. The defendants actions were willful knowing, maliciaous and intentional. The defendants acted under color of law to deprive plaintiffs of their constitutional rights. The defendants obstructed the equal and impartial course of justice because of the plaintiffs class based status in pennsylvania as African and Caucasian Americans.

72. Because the plaintiffs have been subjected to the constitutional violation which led to the contracting and exposure to staphylococcus and MRSA for over 60 months collectively and most likely will be for another 20 months, the

defendants policies damaged them and they are entitled to damages pursuant to 42 usc 1983 in the amount of $650,000.00 each, 42 usc 1985 in the amount of $2,250,000.00 each, the Eighth Amendment in the amount of $2,250,000.00 each and punative damages in the amount of $15,000,000.00 each totaling $80,600,000.(

### COUNT V - NEGLIGENCE

73. paragraphs 1 through 72 are hereby incorporated by reference and realleged as if fully set forth again.

74. defendants as County officials owe the plaintiffs a duty of due care to keep them from contracting or being exposed to MRSA and other diseases.

76. During september, 2005 the defendants damaged their duty of due care when they allowed plaintiff banks to contract MRSA and exposed the plaintiffs to the disease and did not act to curb the staph outbreak or test to grasp the extent of the outbreaks or the risks to inmates. The defendants actions were wilful intentional, malicious and purposely done and damaged the plaintiffs.

77. As such defendants are liable to plaintiffs in the amount of $10,000,000.00 each totaling $40,000,000.00.

### COUNT VI - CONSTITUIONAL VIOLATIONS

78. paragraphs 1 through 77 are hereby incorporated by reference and realleged as if fully set forth again.

79. From february 2005 and continuing through september, defendants refused to provide any cleaning supplies or disenfectant to inmates. Indigent inmates rema: without personal hygiene products and create a health hazard for all inmates.

80. Because the plaintiffs have been subjected to the constitutional violations which led to the contracting and exposure and conditions leading to staphylococcus and MRSA for over 60 months collectively and most likely will be for another 20 months, the defendants policies damaged them and they are entitled to damages pursuant to 42 usc 1983 in the amount of $650,000.00 each, 42 usc 1985 in the amount of $2,250,000.00 each, the Eighth Amendment in the amount of $2,250,000.00 each and punative damages in the amount of $15,000,000.( each totaling $80,600,000.00.    ### COUNT VII - NEGLIGENCE

82. paragraphs 1 through 81 are hereby incorporated by reference and realleged

as if fully set forth again.

83. defendants as county officials owe the plaintiffs a duty of due care to keep them from contracting or being exposed to MRSA and other diseases.

84. during February, 2005 and continuing through september the defendants damaged their duty of due care when they did not provde any cleaning supplies or disenfectant to inmates and allowed the MRSA outbreak to florish. The defendants actions were wilful intentional, malicious and puposely done and damaged the plaintiffs.

84. As such defendants are liable to plaintiffs for the violations cited above in the amount of $10,000,000.00 each totaling $40,000,000.00

## IRREPERABLE HARM

85. Paragraphs 1 through 84 are hereby incorporated by reference and realleged as if fully set forth again.

86. Plaintiffs have suffered and will continue to suffer irreperable harm due to defendants challenged actions and practices described in this complaint.

87. Plaintiffs are confined in a jail permiating with staph, MRSA and other diseases because of the illegalities of defendnats actions. The diseases have already killed two inmates and hospitalized many more and plaintiffs have contracted MRSA and / or been exposed to it.

88. Plaintiffs have constituional right to be free from cruel and unusual punishment to alleviate their suffering. Defendants actions are creating well-founded fear that defendants will futher attack plaintiffs person, health or property thus exacebrating plaintiffs already serious situation and constituting irreparable harm. Along with the irreperable harm and pursuant to the Eighth Amendment, the constitution, 42 usc 1983, and 42 usc 1985 the plaintiffs are entitled to damages in the amount of $100,000,000.00 each totaling $400,000,000.00.

WHEREFORE, each plaintiff, Frederick H. Banks, Don Raoul Hough, James A. Thomas, and Keith Maydak respectfully demand judgment for the Plaintiffs and against the Defendants in the amount of $144,975,000.00, injunctive and declaratory relief to end the recurring violations for a total sum certain

amount of $579,900,000.00 along with costs and fees.

Respectfully submitted,

*Frederick H. Banks*
Frederick H. Banks
Doc # 120759
950 Second Avenue
Pittsburgh, PA 15219

*Don Raoul Hough*
Don Raoul Hough
Doc # 64244
950 Second Avenue
Pittsburgh, PA 15219

*James A. Thomas*
James A. Thomas
Doc # 7632
950 Second Avenue
Pittsburgh, PA 15219

*Keith Maydak*
Keith Maydak
613 Cross Street
East Mckeesport, PA 15035

PLAINTIFFS

## DECLARATION OF THE PLAINTIFFS

We the plaintiffs Frederick H. Banks, Don Raoul Hough, James A. Thomas, and Keith Maydak hereby declare under the penalty for perjury that the allegations contained herein are true and correct 28 usc 1746.

This **DECLARATION** is made this 24th day of September, 2005

*Frederick H. Banks*
Frederick H. Banks

*Don Raoul Hough*
Don Raoul Hough

*James A. Thomas*
James A. Thomas

*Keith Maydak*
Keith Maydak

PLAINTIFFS

## certificate of service

I hereby certify that on this 24th day of September, 2005 I served a true and correct copy of the Amended Complaint by mail delivery upon the followirg exparte;

Clerk, US District Court
po box 1805
Pittsburgh, PA 15230

Frederick H. Banks