IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK H. BANKS; DON RAOUL HOUGH; JAMES A. THOMAS; and KEITH MAYDAK, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-781 |
| COUNTY OF ALLEGHENY; ALLE-GHENY CORRECTIONAL HEALTH SERVICES, INC.; RAMON RUSTIN; CALVIN LIGHTFOOT; FRED ROSE-MEYER; BRUCE DIXON;  DAN ONORATO ; and DANA PHILLIPS, | ) ) ) ) ) ) ) ) ) | Judge Gary L. Lancaster/ Magistrate Judge Amy Reynolds Hay |
| Defendants | ) | Re Dkt. [66] |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that the motion to dismiss, Dkt. [66], be denied.

REPORT

Frederick Banks, Don Raoul Hough, James A. Thomas, and Keith Maydak, (collectively "Plaintiffs"), have filed a civil rights action against employees of the Allegheny County Jail ("ACJ") or corporate entities associated therewith.  Plaintiffs at the time of the events recounted in the complaint were prisoners in the ACJ.  Subsequently, they have been dispersed throughout the United States and even overseas.  The Plaintiffs allege that the Defendants violated their Eighth Amendment rights to be free of cruel and unusual punishment in at least two ways.  First, Defendants allegedly caused Plaintiffs to suffer from overcrowded and other unsanitary

conditions in the ACJ and secondly, these conditions have exposed them to Methicillin-resistant Staphylococcus aureus ("MRSA").  In addition, Plaintiffs bring Eighth Amendment claim of deliberate indifference to medical needs.   Lastly, Plaintiffs also bring state law negligence claims against the Defendants pursuant to this court's supplemental jurisdiction.  Three of the named Defendants, i.e., Allegheny Correctional Health Services, Inc., Dr. Bruce Dixon and Ms. Dana Phillips (collectively, "Moving Defendants"), have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6),  which seeks to have dismissed: (1) the constitutional claims regarding the conditions of confinement because they have no authority over such conditions; (2) the constitutional deliberate indifference claims because the allegations do not amount to deliberate indifference and; (3) the state law claims of negligence, asserting that such is barred by the state statutory immunity provided for in the Political Subdivision Tort's Claims Act ("PSTCA"), 42 Pa.C.S.A. §§8501 *et seq*.  Because Moving Defendants have not shown entitlement to dismissal of the complaint, the motion to dismiss should be denied.

**Relevant Procedural History**

Originally, Plaintiff Banks, Hough and Thomas, filed motions to proceed in forma pauperis.  Dkt. Nos. [1] - [3].  Those motions were accompanied by a complaint.  That complaint listed as the only plaintiffs, the three Plaintiffs who had filed IFP motions   Thereafter, an amended complaint was sent into the Clerk's Office, which the Clerk's office docketed at Dkt. [13], wherein, not only was Plaintiff Maydak added as a Plaintiff but other factual allegations and claims were added as well and another Defendant was added, namely, Dana Phillips.[1]   The Court

---

[1] This is contrary to the representation made in the Plaintiffs' response to the order to show cause, wherein they contend that "[t]echnically, the Amended Complaint was not an amended complaint at all since it did not change any language in the Complaint. Rather it was a mere intervention done by

ordered Plaintiff Maydak to pay a portion of the filing fee, or request IFP status. Dkt. [17]. Plaintiff Maydak responded by filing a motion for reconsideration and claiming that no fee is owed by him because Maydak should be treated as an intervenor or a joined Plaintiff. Dkt. [18], at 2, ¶ 8. Plaintiff Maydak also represented that he was not a prisoner and therefore not subject to the PLRA. Id., at 2, ¶ 9. The Court vacated the order requiring Plaintiff Maydak to pay a portion of the filing fee or request IFP status, Dkt. [19] and then dismissed Plaintiff Maydak's motion for reconsideration as moot. Dkt. [20]. Thereafter, the three motions for IFP filed by the three original Plaintiffs, namely, Banks, Hough and Thomas were granted. Dkt. Nos. [21], [22] and [23]. The Clerk's office then docketed the complaint, Dkt. [24] that had originally accompanied the IFP applications, i.e., the one that only had the three original Plaintiffs and that did not name Dana Phillips as a party Defendant and that did not include the additional claims raised in the amended complaint. Nevertheless, the operative complaint in this case is the amended complaint, Dkt. 13.

     On April 10, 2006, the court received a typed notice of change of address purportedly from James Thomas, indicating that he had been transferred to FCI McKean, in Bradford, Pa.. Dkt. [32]. It is not clear whether the notice was actually prepared and signed by Thomas. In any event, on April 21, 2006, the Court received a second notice of change of address from Plaintiff Thomas, which was this time hand-written and indicated that he was transferred to N.E.O.C.C. (i.e., Northeast Ohio Correctional Center), in Youngstown Ohio. Dkt. [33]. The Court then received a change of address from Plaintiff Banks, Dkt. [34], indicating he was at USP Canaan, in Waymart, Pa. The court issued an order on September 5, 2006, directing the Plaintiffs to,

---

Maydak incorrectly." Dkt. [85] at 2, ¶5.

*inter alia*, provide U.S. Marshals forms for the defendants. Dkt. [42]. The copy of this order sent to Plaintiff Thomas at the N.E.O.C.C. in Youngstown was returned to the court as undeliverable. The court sent a rule to show cause why he should not be dismissed as a party plaintiff. Dkt. [43]. This was sent to Plaintiff Thomas at the Youngstown prison as well as to all other Plaintiffs at their addresses. Curiously, the court received a response, Dkt. [45], purportedly from Plaintiff Thomas, indicating that he had already sent into the court a change of address at Dkt. [32] and that there must have been some internal court error. The return address on the envelope containing the response was not from NEOCC or even FCI-McKean but from the Cross Street address in East McKeesport used by Plaintiff Maydak. Apparently, the author of the response, Dkt. [45], did not know that Plaintiff Thomas filed a second change of address at Dkt. [33]. Consequently, this court ordered Plaintiff Thomas to file a proper change of address and sent this order to Plaintiff Thomas at both FCI-McKean and at N.E.O.C.C. Dkt. [46]. In response, a change of address was filed, Dkt. [47], again purportedly by Plaintiff Thomas, although the return address was from the Cross Street address and that change of address indicated that Plaintiff Thomas was at FCI-McKean.

In the meantime, the court received a notice of change of address from Plaintiff Banks, indicating that he was transferred to a federal facility at LSCI Butner in Butner, North Carolina. Dkt. [44]. Additionally, on December 14, 2006, the court received a notice of change of address from Plaintiff Hough, Dkt. [57], indicating that Plaintiff Hough was now at USP-Terre Haute in Terre Haute, Indiana.

Thereafter, Moving Defendants filed a motion to dismiss, Dkt. [66], and a brief in support, Dkt. [67]. Plaintiff Banks alone, filed a motion for appointment of counsel, Dkt. [68],

and a reply in opposition to the motion to dismiss. Dkt. [69]. On February 26, 2007, Plaintiff Banks filed yet another change of address, indicating that he was now at FCC Yazoo City, in Yazoo City, Mississippi. Dkt. [71].

On March 5, 2007, Plaintiff Maydak filed a motion in which he indicated that neither he nor the other two Plaintiffs' filed the response that Plaintiff Banks had filed and that Maydak did not join such response and that Maydak contacted Plaintiffs Hough and Thomas and he learned that they, too, did not join in Plaintiff Banks' response. Dkt. [72]. In addition, Plaintiff Maydak requested an order directing that he and the other two Plaintiffs be granted 30 days in which to file a response to the motion to dismiss. Id. However, only Plaintiff Maydak signed the response. Being a non lawyer, he was not entitled to make representations or requests on behalf of the other two Plaintiffs. Nevertheless, the Court issued an order granting Maydak, Hough and Thomas until May 9, 2007 in which to file a response. Dkt. [77].

May 9, 2007 having come and gone, and the court having received no response from Plaintiffs Maydak, Hough or Thomas, the court then issued an order to show cause why the court should not decide the motion to dismiss in the absence of their responses. Dkt. [83]. A response, purportedly filed by all of the Plaintiffs, indicated that the reason Plaintiffs Hough, Thomas and Maydak failed to comply with the deadline for filing their response to the motion to dismiss was that the "plaintiffs, who have had an extremely difficult time communicating with each other due to logistics, (Maydak being a non-resident of the United States, Banks being incarcerated in Mississippi, Thomas being incarcerated in Pennsylvania, and Hough being incarcerated in Indiana), have unanimously decided that there are curable defects in the Complaint in this case." Dkt. [85] at 1, ¶ 2. Therein they asked to have a stay of the briefing on

5

the motion to dismiss because they planned on filing a motion for leave to amend with an attached proposed amended complaint and they further represented that they needed the medical records of Plaintiff Banks in order to do so.  The Court will deny by separate Order the Plaintiffs' request for a stay of the proceedings in light of the recommended disposition of the motion to dismiss.

### Fed.R.Civ.P. 12(b)(6) Standard

In Erickson v. Pardus, 127 S.Ct. 2197,  2200 (2007), the Supreme Court recently summarized the legal standards governing motions to dismiss under Rule 12(b)(6) as follows:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, ----, 127 S.Ct. 1955, 167 L.Ed.2d 929, ---- - ---- (2007) (slip op., at 7-8) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp., supra*, at ----, 127 S.Ct. 1955 (slip op., at 8-9) (*citing Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1(2002) . . . .

Given the liberal notice pleading standards of Fed.R.Civ.P. 8, the grant of a motion to dismiss should be rare.  St. Joseph's Hosp., Inc. v. Hosp. Corp. of America, 795 F.2d 948, 953 (11th Cir. 1986) ("Although authorized by the Federal Rules of Civil Procedure, the liberal rules as to the sufficiency of a complaint make it a rare case in which a motion [to dismiss] should be granted.").

Under Rule 12(b)(6), courts may consider, in addition to the complaint, matters of public record and other matters of which a court may take judicial notice,  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).  The question to be resolved is:

whether, taking the factual allegations and all reasonable inferences to be drawn therefrom, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]"  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955,  1964-1965 (2007).  Or put another way,  a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

**Discussion**

One of the first defenses raised by the Moving Defendants is that the Plaintiffs have failed to state a claim under either Section 1983 or Estelle v. Gamble, 429 U.S. 97 (1976) because the complaint fails to allege that any of the Plaintiffs, other than Banks,[2] suffered a physical injury, which the Moving Defendants contend is a requirement for establishing a cause of action under Section 1983 or under Estelle.  The rule is, however, that a prisoner need not suffer physical injury in order to make out a conditions of confinement claim or a deliberate indifference claim under the Eighth Amendment.  See, e.g., Farmer v. Brennan, 511 U.S. 825, 845 (1994) (holding that a prisoner need not suffer physical injury before obtaining relief because " '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief'").  For example in Helling v. McKinney, 509 U.S. 25, 33 - 34 (1993), the Court declared that

> That the Eighth Amendment protects against future harm to inmates is not a novel proposition. The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is "reasonable safety."

---

[2] The Moving Defendants' Motion mistakenly refers to Maydak as being the sole Plaintiff who alleges a physical injury, to wit, a pimple or boil.  In fact, the amended complaint alleges that Banks was the one to have suffered from the pimple or boil.  Dkt. [13] at 9, ¶ 61.

> DeShaney, supra, 489 U.S., at 200. It is "cruel and unusual punishment to hold convicted criminals in unsafe conditions." Youngberg v. Romeo, 457 U.S. 307, 315-316 (1982). It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them. The Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event. Two of them were cited with approval in Rhodes v. Chapman, 452 U.S. 337, 352, n. 17 (1981). Gates v. Collier, 501 F.2d 1291 (CA5 1974), held that inmates were entitled to relief under the Eighth Amendment when they proved threats to personal safety from exposed electrical wiring, deficient firefighting measures, and the mingling of inmates with serious contagious diseases with other prison inmates. Ramos v. Lamm, 639 F.2d 559, 572 (CA10 1980), stated that a prisoner need not wait until he is actually assaulted before obtaining relief. As respondent points out, the Court of Appeals cases to the effect that the Eighth Amendment protects against sufficiently imminent dangers as well as current unnecessary and wanton infliction of pain and suffering are legion. See Brief for Respondent 24-27. We thus reject petitioners' central thesis that only deliberate indifference to current serious health problems of inmates is actionable under the Eighth Amendment.

As is made clear in both Farmer and Helling, the injury for purposes of Section 1983 and Estelle is not a physical injury but a violation of the constitution, i.e., (1) the forcing of prisoners to live in dangerous conditions even if no actual danger befalls them or (2) the forcing of prisoners to suffer from deliberate indifference even if no injury accompanies such.  Accordingly, because physical injury is not a requirement for a constitutional violation under either Estelle or Section 1983, this ground does not merit dismissal of the complaint.

Moving Defendants' citation to Fidtler v. A.T. Rundle, 316 F.Supp. 535 (E.D. Pa. 1970) and Smith v. Heil, 308 F.Supp. 1063 (E.D. Pa. 1970), is unavailing.  In both cases, the court held merely that verbal threats do not state a claim under Section 1983, **not** that physical injury is required in order to state a claim.  Smith v. Heil, 308 F.Supp. at 1067 (" Words in themselves, no matter how threatening, do not constitute an assault . . . . While Heil is empowered to arrest parolees for violation of parole, he is not 'in a position' to revoke plaintiff's parole on his own

motion. Even if we were to read plaintiff's complaint to state that plaintiff believed either that Heil could himself have revoked parole, or could have 'arranged' it- allegations which are conspicuously absent- that bare threat, without more, would not state a claim at common law. We find no persuasive reason why a different rule should obtain under the Civil Rights Act.")(footnotes omitted); Fidtler, 316 F.Supp. 536, n.1 ("Plaintiff also alleges that the defendant threatened him 'with irreparable injury and great bodily harm for which no adequate remedy at law exist (sic).' However, this bare fact does not state a claim under the Civil Rights Act, United States ex rel. Smith v. Heil, 308 F.Supp. 1063 (E.D.Pa.1970) (threats alone not actionable).").

As to Plaintiff Banks, Moving Defendants contend that a mere boil is not a serious medical need as required by Estelle. The Moving Defendants cite no authority to support such a proposition and the court is reluctant to hold as a matter of law, that a boil, especially one that Plaintiff alleges was a caused by a staph infection is not a serious medical need. In addition, Plaintiff Banks alleges that he told the medical personnel that he was allergic to penicillin and yet they apparently treated him with a type of penicillin, which allegedly caused him to fall sick. Dkt. [13] at 9, ¶¶ 65-66. See, e.g., Boyce v. Alizaduh, 595 F.2d 948, 953 (4th Cir. 1979) ("plaintiff is charging that he warned the prison physician of his possible allergic reaction to the medicine being prescribed by the physician, and that, even after this possibility had been established as a fact, the physician persisted in prescribing the very same medication which had caused the allergic reaction, with the result that the plaintiff suffered a serious and painful aggravation of his condition. . . . . we merely find that the allegations of the plaintiff are sufficient under these circumstances to overcome a charge of 'frivolousness' against a Pro se complaint" . . . and to make necessary a response from the prison physician, Dr.

Alizaduh.")(footnote omitted), abrogation on other grounds recognized by, Howard v. Georgetown County Government Body, 2004 WL 3775252, at *4 n.1  (D.S.C. Feb. 19, 2004).

Moving Defendants also contend that Allegheny Correctional Health Services has no authority over the conditions of confinement that Plaintiffs were subjected to other than control over the ACJ's infirmary.  Dkt. [66-1] at 5, ¶15.  The court finds this contention to be better fleshed out in a summary judgment motion and hence, not an appropriate ground for relief under a 12(b)(6) motion.

Next, the Moving Defendants contend that as to all of the state law negligence claims against them, they are entitled to the immunity from suit provided in the state statutory Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8542.  Dkt. [66-1] at 7, ¶ 22.  That statute provides that "A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection."  42 Pa.C.S.A. 8542(a). Essentially, the statute provides a very narrow realm of circumstances under which a "local agency" can be held liable for state tort law claims and generally provides immunity against such claims.

Instantly, the question presented is whether the Moving Defendants constitute a "local agency" in the case of Allegheny Correctional Health Services, Inc., or an "employee" of a local agency in the case of Dr. Bruce Dixon and Dana Phillips.

Moving Defendants cite to Sphere Drake Ins. Co. v. Philadelphia Gas Works, 782 A.2d 510 (Pa. 2001) and Christy v. Cranberry Volunteer Ambulance Corps., 856 A.2d 43 (Pa. 2004) as providing the applicable test for determining whether the Moving Defendants fit within the

definition of "local agency."[3]  Those cases make clear that the test for determining whether a non profit corporation that performs government functions qualifies as a "local agency" within the ambit of the PSTCA involves addressing, *inter alia*, the following issues:

> [u]pon remand, in assessing if Cranberry Ambulance is a local agency for purposes of immunity under the Tort Claims Act, the court's examination shall include, but not be limited to, determining whether:  (1) there is confirmation of Cranberry Ambulance's status as a non-profit corporation;  (2) the ambulance company was incorporated and created by a political subdivision; (3) Cranberry Ambulance assists Cranberry Township in meeting the needs of its citizens;  (4) Cranberry Township appoints the entity's Board of Directors;  (5) Cranberry Township exercises substantial control over Cranberry Ambulance;  (6) the entity's assets would vest in the Township, should the company be dissolved;  (7) Cranberry Ambulance's employees participate in any Township benefit plans exclusively reserved to Township employees;  (8) the ambulance company's sole source of income is the Township;  and (9) the Township indemnifies and holds harmless employees and officers and directors of Cranberry Ambulance from claims and liabilities arising in connection with provision of services.   Only after considering and weighing these factors will the court on remand be able to determine whether or not Cranberry Ambulance is a local agency by virtue of its relationship with the Township, and, hence, immune from tort liability.

Christy, 856 A.2d at 53-4 (footnote omitted).  It is apparent from the recitation of these multiple factors, that determining whether a particular entity qualifies as a "local agency" is a fact-intensive inquiry.

While the court may take judicial notice of the Articles of Incorporation,[4] which the Moving Defendants attached to their brief in support of their motion to dismiss, those Articles of

---

[3] Given the arguments that the Moving Defendants make, Dr. Dixon's and Dana Phillips' defense of immunity is dependent upon their status as an employee of Allegheny Correctional Health Services, Inc., which, the Moving Defendants contend, qualifies for immunity under the PSTCA, and which derivatively provides Dixon and Phillips immunity as employees thereof.

[4] Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Social and Rehabilitation Services, 958 F.2d 1018, 1021 (10th Cir. 1992)  ("The district court took judicial notice of each association's articles of incorporation").

11

Incorporation only inform the court that Allegheny Correctional Health Services, Inc., is a non profit incorporation incorporated and created, not by a political subdivision but incorporated by Bruce Dixon. Those Articles further show that the non-profit corporation does assist Allegheny County in meeting the needs of its citizens by providing health care to those citizens housed in the Allegheny County Jail. However, the Articles do not show that Allegheny County appoints the non-profit's Board of Directors, rather Allegheny County Health, Inc., appoints the Board of Directors other than the two ex officio members. Dkt. [67-2] at 9 ¶B.1. The record does not reveal much about the entity called Allegheny County Health, Inc., as for instance, it does not show whether Allegheny County Health, Inc., qualifies as a "local agency" due to its status as a "local authority," i.e., "a municipal authority or any other body corporate and politic created by one or more political subdivisions pursuant to statute." Sphere Drake, 782 A.2d at 513 (quoting 1 Pa.C.S. § 1991). The record does not affirmatively show whether Allegheny County or in another "local authority" exercises substantial control over Allegheny Correctional Health Services, Inc. The record does not affirmatively demonstrate that the Allegheny Corrections Health Services Inc.'s assets would necessarily vest in Allegheny County or another "local authority." Rather, it would appear that such assets would be "turned over to one or more organizations which themselves are exempt as organizations described in sections 501(c)(3) and 170(c)(2) of the Internal Revenue Code of 1986 or corresponding sections of any future Internal Revenue Code, or to the Federal State or local government for exclusive public purpose." Dkt. [67-2] at 4. The record is absolutely silent with respect to (1) whether Allegheny Correctional Health Services, Inc.'s employees participate in any Allegheny County or other local authority's benefit plans exclusively reserved to Allegheny County or other local authority's employees; (2)

whether Allegheny Correctional Health Services, Inc's sole source of income is Allegheny County or some other local authority; and (3) whether Allegheny County or some other local authority indemnifies and holds harmless employees and officers and directors of Allegheny Correctional Health Services, Inc.

Given this state of the record, the applicable standard of review for a 12(b)(6) motion, and the complicated factual inquiry that the Pennsylvania Supreme Court deems required to answer the question of whether a specific entity qualifies as a "local agency," the most prudent, and indeed, the correct route would be for the court to deny the Moving Defendants' motion to dismiss at this juncture in favor of permitting the parties to develop a factual record with respect to these factors. See, e.g., Christy, 856 A.2d at 44 (we "remand the matter for the parties to introduce evidence regarding whether the ambulance company is a 'local agency,' pursuant to our analysis in Sphere Drake Insurance Company v. Philadelphia Gas Works, 566 Pa. 541, 782 A.2d 510 (2001).").

This question may be better settled at the summary judgment stage. In any event, the motion to dismiss should be denied because it is plausible, given the complaint and the Articles of Incorporation, that the Moving Defendants **may** not constitute a "local agency" and none of the other arguments by the Moving Defendants convince the court that they are entitled to have the complaint dismissed for failure to state a claim upon which relief can be granted.

CONCLUSION

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the

date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                Respectfully submitted,

                */s/  Amy Reynolds Hay*
                United States Magistrate Judge

Dated: 4 September, 2007

cc: Hon. Gary L. Lancaster
   United States District Judge

   Frederick H. Banks
   05711-068
   FCC Yazoo City
   Unit 2AU
   PO BOX 5000
   Yazoo City, MS 39194

   Don Raoul Hough
   #07839-068
   U.S. Penitentiary
   P. O. Box 12015
   Terre Haute, IN 47801

   James A. Thomas
   07754-068
   FCI McKean
   PO Box 8000
   Bradford, PA 16701

   Keith Maydak
   613 Cross Street
   East McKeesport, PA 15035

   All counsel of record by Notice of Electronic Filing