IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK H. BANKS; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-781 |
| | ) | |
| COUNTY OF ALLEGHENY; ALLE- | ) | Judge Gary L. Lancaster/ |
| GHENY CORRECTIONAL HEALTH | ) | Magistrate Judge Amy Reynolds Hay |
| SERVICES, INC.; RAMON RUSTIN; | ) | |
| CALVIN LIGHTFOOT; FRED ROSE- | ) | |
| MEYER; BRUCE DIXON;  DAN | ) | |
| ONORATO ; and DANA PHILLIPS, | ) | |
| | ) | |
| | ) | |
| Defendants | ) | Re:  Dkt. Nos.  [102] & [110] |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that the County Defendants' motion to dismiss, Dkt. [110], be granted and that the complaint be dismissed against the County Defendants for failure to state a claim and/or that the complaint be dismissed against the County Defendants as frivolous/malicious pursuant to the screening provisions of the PLRA.  It is further recommended that the complaint be dismissed against the Medical Defendants for failure to state a claim pursuant to the screening provisions of the PLRA.  Hence, the Medical Defendants' motion to dismiss, Dkt. [102], may be dismissed as moot.  Furthermore, it is recommended that the Court decline to exercise supplemental jurisdiction over the state law claims.

REPORT

Frederick Banks ("Plaintiff") is currently incarcerated at the FCC-Yazoo City in Mississippi.  He was previously convicted in this district of seven counts of mail fraud, criminal

copyright infringement, money laundering, uttering and possessing counterfeit or forged securities, and witness tampering in United States v. Banks, No. 03-CR-245 (W.D. Pa.).

Named as defendants in the case at bar are Allegheny County, Ramon Rustin, Calvin Lightfoot, Fred Rosmeyer (all former wardens of Allegheny County Jail where Plaintiff was housed during the pendency of his federal trial) and Dan Onorato (collectively the "County Defendants"). Because Banks has previously filed a lawsuit against those identical defendants, raising substantially the same claims as raised herein, this case is duplicative and hence, frivolous or malicious.[1] Alternatively, this case is barred by res judicata as to those defendants. As to the remaining defendants, i.e., Dr. Bruce Dixon, Dana Phillips and Allegheny Correctional Health Services, Inc., (collectively "the Medical Defendants"), Plaintiff fails to state an Eighth Amendment claim upon which relief can be granted.

**Relevant Procedural History**

This case has been the subject of prior proceedings, familiarity therewith is presumed. Hence, only a brief summary follows. Plaintiff, along with two other inmates, filed requests to proceed in forma pauperis ("IFP") on June 6, 2005. Attached to the requests was a proposed civil rights complaint. Before the requests for IFP were able to be ruled upon, the Clerk's office

---

[1] Since February 3, 2005, Plaintiff has filed or participated as a party plaintiff or intervenor in approximately 45 civil actions in the federal District Courts. Since January 20, 2005, Plaintiff has filed or participated in roughly 31 bankruptcy cases. Since March 9, 2005, Plaintiff has filed or participated in approximately sixty cases in the federal Courts of Appeals. As a consequence of his litigation activities, Plaintiff has accumulated many more than three strikes. See, e.g., Banks v. U.S. Marshal, Slip Copy, 2008 WL 1751700 (10th Cir. April 16, 2008) (assessing four strikes); Banks v. Vio Software, No. 07-1339 (10th Cir. April 29, 2008)(assessing two strikes)(available on PACER); Banks v. PNC Bank, NO. C06-1109JLR, 2007 WL 2363064, at *1 n.2 (W.D.Wash. Aug. 14, 2007)(counting three strikes against Plaintiff based upon two suits filed in the Western District and one suit filed in the Middle District of Pennsylvania); Banks v. Crockett, No. 1:07-CV-1019 (M.D.Pa. Dkt. 5, order entered 6/7/07) (denying Plaintiff IFP status based on the fact that he has four strikes). See also Banks v. Williams, No. 5:07-CV-226, 2008 WL 544946, (S.D.Miss. Feb. 21, 2008)(denying Plaintiff IFP status because he has at least three strikes). Given his litigiousness, it is not surprising that Plaintiff sometimes files duplicative or repetitious lawsuits.

docketed an "Amended Complaint" on October 3, 2005. Dkt. [13]. This "Amended Complaint" added a new party plaintiff by the name of Keith Maydak and added a new party defendant by the name of Dana Phillips. All four of the purported plaintiffs had been housed at the Allegheny County Jail ("ACJ" or "Jail"). The amended civil rights complaint averred a whole host of complaints about the ACJ being overcrowded, unsanitary, unsafe, etc. In addition, the Plaintiffs complained that these conditions exposed them to Methicillin-resistant Staphylococcus aureus ("MRSA") and other staphylococcus infections.

Finally, on February 24, 2006, after the Plaintiffs' motions to proceed in forma pauperis were granted,[2] the Clerk's office docketed the original complaint, Dkt. [24], which did not list Keith Maydak as a plaintiff nor did it list Dana Phillips as a party defendant. In most other respects, however, Docket [24] complained of the same conditions of the ACJ as had Dkt. [13].

Because the various plaintiffs were eventually moved out of the ACJ to other prisons across the country and because Maydak was purportedly out of the Country and because this presented extreme problems for case management, the Court ordered the cases to be severed with each plaintiff having to file his own individual suit. Dkt. [93]. In that same order directing severance of the cases, the plaintiffs were directed to file amended complaints with allegations concerning solely their own complaints. Plaintiff Banks was permitted to continue under the current case number with all the other plaintiffs being assigned new case numbers.

In response to the order directing new complaints, Plaintiff Banks submitted a second amended complaint, Dkt. [101], which is the operative complaint. The operative complaint named as defendants the County Defendants and the Medical Defendants. The operative complaint complained of conditions at the ACJ.

_____

[2] The order granting Plaintiff Banks' request to proceed in forma pauperis was granted prior to Banks accumulating three strikes.

The operative complaint alleges general conditions of confinement at the ACJ were dirty, unsanitary, unsafe and this resulted in exposure to MRSA. Plaintiff contends that during September 2005, he actually contracted MRSA in the form of a boil on his forehead. He further claims that he told the Medical Defendants that he was allergic to penicillin, but notwithstanding this, they treated him with "doxcycline" [sic], Dkt. [101] at 6, ¶ 66, which Plaintiff claims he later learned is a form of penicillin.

The operative complaint alleges that the foregoing conditions at the ACJ violate Plaintiff's Eighth Amendment rights. In addition, Plaintiff brings state law negligence claims against all of the Defendants pursuant to the Court's supplemental jurisdiction.

The Medical Defendants filed a motion to dismiss the operative complaint, Dkt. [102], and a brief in support, Dkt. [103]. Plaintiff filed his response, Dkt. [106], and a supplemental response to the Medical Defendants' motion, Dkt. [109]. The County Defendants then filed their motion to dismiss the operative complaint, Dkt. [110], and a brief in support, Dkt. [112].

**Applicable Legal Principles**

In the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of oftentimes frivolous and harassing law suits brought by persons in custody. See Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). The PLRA significantly amended the statutory provisions with respect to actions brought by prisoners who are proceeding *in forma pauperis*. The amended version of the statute now reads that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid [by a prisoner granted IFP status], the court shall dismiss the case **at any time** if the court determines that– (A) the allegation of poverty is untrue; or (B) the action or appeal– (i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(emphasis added). Here, Plaintiff has been granted IFP status and was a prisoner at the time of initiating this suit and continues to be a prisoner within the meaning of 28 U.S.C. § 1915.[3] Thus, Section 1915(e)(2) is applicable herein. Moreover, not only is a court permitted to sua sponte dismiss a complaint which fails to state a claim, but it is required to do so by the mandatory language of "the court shall dismiss" utilized by Section 1915(e). See, e.g., Keener v. Pennsylvania Board of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim."); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)("It is also clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").

In performing a court's mandated function of sua sponte reviewing complaints under 28 U.S.C. § 1915(e) to determine if they fail to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa. 1997) (applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)); Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va.) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'. This is the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)."), aff'd, 116 F.3d 473 (Table) (4th Cir. 1997).

---

[3] The term "prisoner" as used in Section 1915 means "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h).

Because under Rule 12(b)(6) courts may consider, in addition to the complaint, matters of public record and other matters of which a court may take judicial notice, Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994), and because the standards for dismissal for failing to state a claim under 28 U.S.C. § 1915(e) are the same as under a 12(b)(6) motion, the court may consider matters of which it may take judicial notice under 28 U.S.C. §§ 1915(e) and 1915A and under 42 U.S.C. § 1997e(c). See, e.g., Lloyd v. U.S., No. 99 C 3347, 1999 WL 759375, at *1 (N.D. Ill. Sept. 3, 1999) ("As the court may take judicial notice of public records without converting a motion to dismiss to a motion for summary judgment, Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994), the court will take judicial notice of court records in conducting its initial review under § 1915A.").

In reviewing complaints as mandated by 28 U.S.C. § 1915(e) and, consequently, utilizing the standards for a 12(b)(6) motion to dismiss, the complaint must be read in the light most favorable to the Plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true. See Estelle v. Gamble, 429 U.S. 97 (1976). However, the court need not accept as true any legal averments or conclusions contained in the complaint. Papasan v. Allain, 478 U.S. 265, 286 (1986)("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); Labovitz v. Washington Times Corp., 172 F.3d 897, 898 (D.C. Cir. 1999)(the court "need not accept purely legal conclusions masquerading as factual allegations.") (some internal quotations omitted). Neither does the court have to accept as true anything in the complaint which contradicts facts of which the court may take judicial notice. See, e.g., Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)(in ruling

on a motion to dismiss, "[t]he court need not, however, accept as true allegations that contradict matters properly subject to judicial notice. . . .").

Furthermore, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering pro se pleadings than when judging the work product of an attorney.[4] Haines v. Kerner, 404 U.S. 519 (1972). As noted, Plaintiff is proceeding pro se here. Nevertheless, dismissal is proper under Rule 12(b)(6) and hence, under Section 1915(e)(2)(B)(ii), where the court determines that the facts alleged, which are not contradicted by facts of which judicial notice may be had, taken as true and viewed in a light most favorable to the plaintiff, fail to state a claim as a matter of law. See, e.g., Gould Electronics, Inc. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000).

In addition, because Plaintiff seeks to challenge prisoner conditions, the screening provisions of 42 U.S.C. 1997e(c) apply. Furthermore, because Plaintiff seeks redress from a governmental entity and or its employees, the screening provisions of 28 U.S.C. § 1915A apply as well, at least as to the County Defendants.

Pursuant to these three screening provisions, a court is obliged to sua sponte dismiss complaints that are frivolous, malicious or that fail to state a claim upon which relief can be granted. The court's obligation to dismiss a complaint under the PLRA screening provisions is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not

---

[4] The Court accords Plaintiff the liberality of the Haines rule, notwithstanding his claim to be an attorney, see Dkt. [116] at 2-3, given that the Court has rejected Plaintiff's claims to be an attorney. Dkt. [116] at 2 ("Although plaintiff claims in his motion to be a licensed attorney, he has presented no evidence to the Court to support that he has been licensed to practice law by any State or Territory of the United States. Plaintiff's purported membership in a bar association does not constitute such evidence. However, even if he were a duly licensed attorney, something which is doubtful given that he is a currently incarcerated felon, he would not be entitled to attorney's fees. . . .")

relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez.

**Discussion**

### 1. Duplicative suits are frivolous or malicious

"Repetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." McWilliams v. Colorado, 121 F.3d 573, 574 (10th Cir. 1997) (quotation marks and alteration omitted).

Here, the instant complaint is clearly repetitious of another complaint that Plaintiff filed, of which this court takes judicial notice, namely, Frederick Banks v. Hull, No. 04-1771 (W.D. Pa suit commenced on 11/18/04)(hereinafter referred to as "the Hull case"). In the Hull case, Banks filed an IFP request which was accompanied by a proposed civil rights complaint against several defendants, none of whom are named in the case at bar. However, on August 2, 2005, Plaintiff filed an amended complaint in the Hull case at docket number 24, wherein Plaintiff added defendants including the following defendants who are also named in the case at bar: Allegheny County, Ramon Rustin, Calvin Lightfoot, Fred Rosmeyer and Dan Onorato. In that amended complaint in the Hull case, Plaintiff complained of a whole host of problems at the ACJ, which are substantially duplicative of the claims raised in the case at bar. For instance, Plaintiff complained that

> 63. The tables are rotting out and many do not have covers.
> 64. The carpeting permeates [sic] with dry rotting filth and must be replaced as it is the primary source for killer diseases such as MRSA which frequently kills and permanently damages inmates and officials at the building.
> 65. Each cell has holes and cracks in the walls, ceiling and floors. Tiny disease infected winged bugs, knats, mites and fleas routinely enter the cells through the holes and leave bug bites on inmates. The bugs have infected the jail because the sewer drains are never cleaned and remain clogged which does not allow the bugs to escape – i.e., one way in – no way out.

66.  The toilets can only be flushed once or twice an hour and the recycled water therein permits life threatening germs to enter the cells.  In sum, the jail is an eyesore that needs shut down.  The defendants obstructed the equal and impartial course of justice because of the plaintiff's class based status in Pennsylvania as an African-American inmate.

> . . . .

68.  By subjecting Banks to the life threatening hazardes [sic] conditions cited above which occur because of the defendants' official and personal policies and procedures, the defendants, acting under color of law to deprive Banks of his constitutional rights infringed upon Banks [right] to due process, to be free from cruel and unusual punishment, right to equal treatment and protections and the rights of a pre-trial detainee.  The defendants actions in this elaborate civil conspiracy were wilful, malicious, knowing and intentional.

<u>Frederick Banks v. Hull</u>, No. 04-1771 (W.D. Pa. Dkt. 24 at 9).

In the operative complaint at bar, Plaintiff again complains of the conditions at the ACJ, alleging a whole host of complaints that those conditions are unsanitary, and complaining about

28.  Inmates are not being given tests for MRSA despite having suspicious lesions. . . .
38. Many tables do not have tops, (they peel off).  These tables cannot be cleaned since rigid wood is showing. The broken tables must be repaired. . . .
53. By subjecting the Plaintiff to the overcrowded conditions leading to Staphylococcus Aureus and MRSA, a deadly disease cited above, which occur because of the Defendants' official and personal policies and procedures, the Defendants infringed upon the Plaintiff's rights to due process and to be free from cruel and unusual punishment.  The defendants actions were willful, knowing and intentional.

Dkt. [101] at 4.

In light of the foregoing, the Court finds the operative complaint at bar to be duplicative or repetitive of the Hull case and, therefore, malicious and/or frivolous.  Hence, it should be dismissed as frivolous/malicious pursuant to any or all three of the screening provisions of the PLRA as to the County Defendants.

## 2.  Res Judicata Bars this suit at least as to the County Defendants

In the alternative, this case is barred by res judicata or claim preclusion.[5]  The doctrine of res judicata provides that a final judgment rendered by a court of competent jurisdiction, on the merits, is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same cause of action.  In re Weisbrod & Hess Corp., 129 F.2d 114 (3d Cir. 1942).  As explained by the Court of Appeals, the federal  law[6] of res judicata or claim preclusion involves a three pronged test, and bars a second suit where "there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."  Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991).  The "purpose of [the res judicata] doctrine is to relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudications."  Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 551 (3d Cir. 2006).  In light of the purposes which res judicata serves, the doctrine not only bars relitigation in a second suit of what was actually

----

[5]  See, e.g., Baker v. Potter, 175 Fed.Appx. 759, 761 (7th Cir. 2006)("Baker's claim for breach of the settlement agreement is barred by claim preclusion, also called res judicata").

[6]  The federal common law doctrine of claim preclusion is to be distinguished from the various states' laws of claim preclusion.  Federal courts are sometimes called upon to give preclusive effect to prior state court judgments.  The governing law in such cases is the state law of claim preclusion from the state of the prior state court judgment.  See 28 U.S.C. § 1738 (full faith & credit statute); Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985)("This statute [i.e., Section 1738] directs a federal court to refer to the preclusion law of the State in which judgment was rendered. 'It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.'");  Hillary v. Trans World Airlines, Inc., 123 F.3d 1041, 1043 (8th Cir. 1997)  ('it is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum.'").  In contrast, federal courts are sometime called upon to give preclusive effect to prior federal court judgments.  The governing law in such cases is the federal common law of claim preclusion.  Ross ex rel. Ross v. Board of Educ. of Tp. High School Dist. 211, 486 F.3d 279, 283 (7th Cir. 2007)("The federal law of claim preclusion applies here because the earlier judgment was rendered by a federal court.").  Because the prior suit was from a federal court, the federal common law of preclusion applies herein.

litigated in the first suit but res judicata also bars relitigation of what could have been litigated in the first suit. See, e.g., Smith v. Morgan, 75 Fed.Appx. 505, 506 (6th Cir. 2003) ("Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated as well as every theory of recovery that could have been presented."); L-Tec Electronics Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 87-88 (2d Cir. 1999) (*per curiam*) ("The doctrine of res judicata, or claim preclusion, prevents a plaintiff from relitigating claims that were or could have been raised in a prior action against the same defendant where that action has reached a final judgment on the merits.").

We will first address the second prong of "same parties or their privies." Five of the party-defendants in the Hull case, namely, Allegheny County, Lightfoot, Rosmeyer, Rustin and Onorato, and in the present suit are absolutely identical. In the case at bar, Plaintiff merely added the Medical Defendants. In addition, Banks was the Plaintiff therein and herein. Hence, the second prong is met.

The first prong of "final judgment on the merits" is also met. In the Hull case, the report and recommendation recommended dismissal as to the County Defendants for failure to state a claim upon which relief can be based. Banks v. Hull, No. 04-1771 (W.D. Pa. Dkt. [174] at 21 to 22). Over Plaintiff's objections, the District Court adopted the report and recommendation and certified that any appeal would be frivolous. Id., Dkt. [179].

A District Court's order dismissing a complaint for failure to state a claim upon which relief can be granted constitutes a "final judgment on the merits" for the purposes of res judicata. See, e.g., Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the

merits'" for purposes of res judicata); <u>Cieszkowska v. Gray Line New York</u>, 295 F.3d 204 (2d Cir. 2002)(giving res judicata effect to a prior suit which had been dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief could be granted and hence barring a second suit which the District Court dismissed "for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) because the complaint was barred by res judicata"). Hence, the first prong is also met.

Lastly, the Court finds the third prong is met as well herein. The Court of Appeals has explained this prong in the following terms:

> In *Athlone*, we noted that the term "'cause of action' cannot be precisely defined, nor can a simple test be cited for use in determining what constitutes a cause of action for res judicata purposes." *Id. (quoting Donegal Steel Foundry Co. v. Accurate Prods. Co.*, 516 F.2d 583, 588 n. 10 (3d Cir. 1975)). Rather, we look toward the "essential similarity of the underlying events giving rise to the various legal claims." *Davis v. United States Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982) (*in banc*), *cert. denied*, 460 U.S. 1014 . . . This principle is "in keeping with '[t]he present trend . . . in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.'" *Athlone*, 746 F.2d at 984 (*quoting* 1B J. Moore & J. Wicker, Moore's Federal Practice ¶ 0.410[1], at 359 (2d ed. 1983)).
>     In conducting this inquiry, we focus upon "whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same." *Athlone*, 746 F.2d at 984. A mere difference in the theory of recovery is not dispositive. *Id*. Thus, the fact that Lubrizol relies on a new theory of "reformation" will not prevent preclusion. In both suits the acts complained of, the material facts alleged, and the witnesses and documentation required to prove the allegations are all the same.

<u>Lubrizol Corp. v. Exxon Corp.</u>, 929 F.2d at 963.

Likewise here, the acts complained of against the Defendants in the Hull case of subjecting Plaintiff to a myriad of unconstitutional conditions at the ACJ by force of their policies and/or on the basis that their employees engaged in bad acts are essentially the same acts complained of here. The only differences may be that the complaint in the case at bar specifies

many more conditions than those specified in the complaint in the Hull case. Adding such additional specific allegations of bad conditions may not, however, overcome res judicata nor be permitted to eviscerate the policy purposes that res judicata serves, especially conservation of scarce judicial resources because the factual bases for the two suits are substantially the same, i.e., the policies of the County Defendants. See, e.g., id.; Berlitz Sch. of Languages of Am., Inc. v. Everest House, 619 F.2d 211, 215 (2d Cir. 1980)("Whatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata."); Harborside Refrigerated Services, Inc. v. Vogel, 959 F.2d 368, 372 (2d Cir. 1992)("Res judicata thus not only bars parties from relitigating the same cause of action, but also 'prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised.'")(quoting Murphy v. Gallagher, 761 F.2d 878, 879 (2d Cir. 1985)); McClain v. Apodaca, 793 F.2d 1031, 1034 (9th Cir. 1986)(a plaintiff "cannot avoid the bar of res judicata merely by alleging conduct by the defendant not alleged in the prior action or by pleading a new legal theory."). Accordingly, because all three prongs are met and/or because Plaintiff could have raised the various additional specific claims of allegedly illegal conditions in the Hull case, Plaintiff's current suit is barred by the doctrine of res judicata and, as such, the complaint fails to state a claim upon which relief can be granted and must be dismissed for failure to state a claim. Hence, the County Defendants's motion to dismiss should be granted. See In re Desrosiers, 212 B.R. 716, 718-719 n.1 (Bkrtcy. D.Mass. 1997) ("Transamerica based its Motion to Dismiss the Adversary Proceeding on Federal Rule of Civil Procedure 12(b)(1).... Rule 12(b)(1) relates to the lack of subject matter jurisdiction. However, as detailed below, Transamerica argues only that the causes of action raised in this adversary

proceeding are barred by the doctrine of res judicata. Thus, the applicable ground for dismissal is the Complaint's failure to state a claim upon which relief can be granted.").[7]

For any or all of the foregoing reasons, the complaint should be dismissed as against the County Defendants for failure to state a claim upon which relief can be granted and/or as frivolous/malicious.

### 3. The Complaint fails to state a claim against the Medical Defendants

Plaintiff's claims against the Medical Defendants are as follows. First, Plaintiff presented with a boil on his forehead caused by MRSA to the Medical Department in September 2005 and was examined by the Medical personnel at the Jail. The Medical Personnel told him he did indeed have a staphylococcus aureus infection and told him not to touch it. Banks asked for testing but was denied. Banks informed the treating clinician that he was allergic to penicillin and the clinician prescribed doxycycline and told him to take two pills a day and return to see her if the boil had not gone away in ten days. Banks later learned after ingesting all of the pills that doxycycline is a form of penicillin. Banks alleges that he suffered headaches, heat flashes, hives, and could not sleep due the ingesting the medications that he was allegedly allergic to. Banks further alleges that the clinician treating him was not a doctor and was unqualified to treat him. Dkt. [101] at 5 to 6. Plaintiff claims that the foregoing amounted to deliberate indifference to his serious medical needs of MRSA.

At the time of the alleged deliberate indifference, i.e., September 2005, Plaintiff had already been convicted and sentenced in <u>United States v. Banks</u>, No. 03-cr-245 (W.D. Pa. Dkt.

---

[7] The Court notes that the foregoing reasoning may or may not apply to the Medical Defendants for at least one reason. The Medical Defendants were not named in the Hull case, nor can the Court determine at this stage whether the Medical Defendants can be deemed to be in privity with the County Defendants. Hence, it is not clear whether the second prong for res judicata is met. Accordingly, the Court does not recommend dismissal on the grounds of res judicata as to the Medical Defendants.

[207], which is the judgment of sentence entered 2/28/05). Hence, given Plaintiff's status as a convicted and sentenced inmate, the Eighth Amendment is applicable to his claims of deliberate indifference. See Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000) (Fourteenth Amendment substantive due process clause standard applies to criminals who have been convicted but not yet sentenced). This is true notwithstanding the fact that in September 2005, Plaintiff was awaiting trial on his other charges at United States v. Banks, No. 04-CR-176 (W.D. Pa.), of which he was subsequently convicted and sentenced but both the conviction and sentencing occurred only after September 2005. Laza v. Reish, 84 F.3d 578, 580 (2d Cir. 1996) (prisoner convicted in state court and awaiting trial in federal court on other charges was not a pretrial detainee for purposes of substantive due process claim because his state sentence was not complete); Munz v. Michael, 28 F.3d 795, 798 (8th Cir. 1994) (Eighth Amendment standard applies to state prisoner in temporary federal custody for purposes of federal criminal trial).

Hence, Plaintiff's claims against the Medical Defendants are premised upon the Eighth Amendment standards of the United States Constitution. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[8] The Supreme Court has explained that analysis of a violation of the Eighth Amendment involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and (2) a "subjective

---

[8] Technically, the Eighth Amendment applies to the states through the Fourteenth Amendment. See Estelle v. Gamble, 429 U.S. 97, 101-02 (1976) (citing Robinson v. California, 370 U.S. 660 (1962)). The standards of the Eighth Amendment barring the federal government from inflicting cruel and unusual punishments are the standards applicable to the States through incorporation by the Fourteenth Amendment's due process clause. See Sistrunk v. Lyons, 646 F.2d 64, 66-67 (3d Cir. 1981)(citing Robinson v. California). The standards under the Eighth Amendment and the standards under the Fourteenth Amendment are fundamentally identical. Furman v. Georgia, 408 U.S. 238, 422 n.4 (1972)(Blackmun, J., dissenting) ("the tests for applying these two provisions are fundamentally identical."). Given this, the court will not separately analyze the Eighth and Fourteenth Amendments.

inquiry" into the mind of the person inflicting the harm. See Wilson v. Seiter, 501 U.S. 294 (1991). Accord Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000)("A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components–one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."). The Court of Appeals for the Third Circuit has explained the objective element as requiring proof that "the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. . . . If not our inquiry is at an end." Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000). Only if the harm suffered is sufficiently serious does the court then turn to analyze the subjective element which the Third Circuit Court has described as determining whether the prison "officials acted with a sufficiently culpable state of mind. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain." Id. (citations omitted).

Although the "objective component of a cruel-and-unusual-punishment claim focuses on the harm done," Sims v. Artuz, 230 F.3d at 21, the Third Circuit Court has cautioned that "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Fuentes v. Wagner, 206 F.3d at 344 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)) (internal quotes omitted). In determining whether a harm intended as punishment "was sufficiently serious to fall within the Eighth Amendment's zone of protections," Fuentes v. Wagner, 206 F.3d at 344, the Third Circuit Court of Appeals has described the inquiry as whether the prisoner has been deprived of the "minimal civilized measure of life's necessities." Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992) superseded by statute on other grounds as stated in, Ghana v. Holland, 226 F.3d 175, 184 (3d Cir. 2000). Proving that one has been deprived of the minimal civilized measure of life's necessities requires proof that one has

been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault.  Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997).

As to the subjective component, in cases involving the denial of medical care, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment."  Estelle, 429 U.S. at 104 (internal quotations omitted).  The Court has held that "deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  As a corollary of the deliberate indifference standard, mere negligence by staff at the prison, medical personnel and physicians in treating prisoners is not sufficient to state an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06.  The Supreme Court has held that

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Id.

Here, Plaintiff alleges that he presented with a boil infected with MRSA and that he was provided treatment in the form of being prescribed doxycycline. His complaint is not that he was denied all treatment, but that the treatment he was provided with was inadequate.  More

specifically, Plaintiff complains that he was not given a test to determine the exact type of infection.

Where treatment is offered, as here, the mere allegation of an opinion difference between a patient and a clinician, or between two medical professionals, does not amount to "deliberate indifference to a serious medical need." White v. Napoleon, 897 F.2d 103, 110 (3d Cir.1990) ("there may ... be several acceptable ways to treat an illness."); Young, 960 F.2d at 358 n.18 (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief under section 1983). Finally, when a treating clinician exercises professional judgment, her behavior does not constitute a violation of a prisoner's Eighth Amendment rights. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

With the relevant law as a backdrop  - -  and accepting as true the facts set out in his Complaint, which are not contradicted by facts of which the Court may take judicial notice  - - the Court draws the following conclusions.  Plaintiff's complaint fails to state an Eighth Amendment claim of deliberate indifference.  This is because Plaintiff was seen and evaluated by a clinician, even if not a doctor, and received some treatment for his MRSA infection.  Moreover, although not necessary to the disposition of this particular claim, the Court takes judicial notice of the fact that treatment of MRSA with doxycycline is a medically acceptable course of treatment.[9]  Plaintiff fails to state a claim upon which relief can be granted because he was not

---

[9]  The Court takes judicial notice of the United States Government's Centers For Disease Control website at

http://www.cdc.gov/ncidod/dhqp/pdf/ar/CAMRSA_ExpMtgStrategies.pdf

The CDC's publication "Strategies for Clinical Management of MRSA in the Community" provides that

Several antimicrobial agents have been proposed as alternatives to beta-lactams for outpatient treatment of SSTIs [i.e., skin and soft tissue infections] when an oral regimen with activity against MRSA is desired. These include clindamycin, tetracyclines

denied the minimal civilized measure of life's necessities, indeed he received medical treatment for his alleged MRSA.

The foregoing analysis, however, does not address the allegations of the complaint that Plaintiff told the clinician he was allergic to penicillin but that the clinician nevertheless prescribed a type of penicillin for him, i.e., doxycycline, from which Plaintiff alleges he became ill. Unfortunately for Plaintiff, doxycycline is not a form of penicillin. The Court takes judicial notice of the fact that doxycycline is a tetracycline drug, as noted in the footnote above that quoted from the CDC.[10] The Court takes further judicial notice that "Tetracycline is a 'broad-spectrum' antibiotic medication used to treat bacterial infections . . . . Tetracycline is

(including **doxycycline** and minocycline), trimethoprim-sulfamethoxazole (TMP-SMX), rifampin (used only in combination with other agents), and linezolid. There are advantages and disadvantages to each of these agents. More data are needed from controlled clinical trials to establish optimal regimens for the treatment of MRSA SSTI.

. . . .

Tetracyclines (e.g., tetracycline, doxycycline, minocycline): Doxycycline is FDA-approved for the treatment of *S. aureus* skin infections, but not specifically for those caused by MRSA. There is little information in the medical literature on the use of tetracyclines for the treatment of MRSA infections. In a small case series, the long-acting tetracyclines, **doxycycline** and minocycline, **appeared to be adequate for the treatment of MRSA SSTIs** [i.e., skin and soft tissue infections] . . . .

Id., at pp. 7 to 8 (emphases added). The CDC further explained that "[t]he spectrum of disease caused by CA-MRSA appears to be similar to that of methicillin-susceptible *Staphylococcus aureus* (MSSA) in the community. Skin and soft tissue infections (SSTIs), specifically furuncles (abscessed hair follicles or 'boils'), carbuncles (coalesced masses of furuncles), and abscesses, are the most frequently reported clinical manifestations" of MRSA. Id. at p. 2.

[10] See also

http://www.fda.gov/OHRMS/DOCKETS/98fr/110201b.htm

which notes that "Doxycycline and other members of the tetracycline class of antibiotics . . . ." (Site last visited 6/2/08).

often used as an alternative drug for people who are allergic to penicillin."[11]  Hence,

notwithstanding what Plaintiff supposedly learned about the relationship between penicillin (to

which he is allegedly allergic) and doxycycline, the fact that the clinician prescribed doxycycline

even after Plaintiff indicated he was allergic to penicillin fails to state a claim of deliberate

indifference because the two drugs are not related as the Plaintiff alleges.   Accordingly, this

claim fails to state a claim upon which relief can be granted.

Last but not least, the Court addresses the claim that the clinician, Dana Phillips, was

unqualified to treat Plaintiff because she "is not a medical doctor."  Dkt. [101] at 6, ¶ 68.  The

mere fact that she is not a doctor fails to state a claim of deliberate indifference as the

Constitution does not mandate that inmates be seen and treated necessarily by doctors.  See, e.g.,

Cuffle v. Avenenti, 26 F.3d 130 (Table), 1994 WL 245915,  at *3-*4 (9th Cir. 1994)("Cuffle

contends that the defendants were deliberately indifferent to his serious medical needs by staffing

the medical facility with nurse practitioners rather than doctors. This contention lacks merit. . . .

We conclude that he has failed to state a cognizable claim."); Chauncey v. Evans, No. 2:01-

CV-0445, 2003 WL 21730580, at *7 (N.D.Tex. Feb. 11, 2003)(court found prisoner failed to

state a claim upon which relief can be granted where "Plaintiff argues the treatment recounted

above constitutes deliberate indifference to a serious medical need because defendant WILCOX

is a licensed vocational nurse, not a doctor, and only a doctor can legally diagnose and prescribe

---

[11]  http://www.tramadolpainrelief.net/antibiotics.html
(Site last visited 6/2/08).   See also

http://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?id=604

(wherein it is stated that "[w]hen penicillin is contraindicated, tetracyclines are alternative drugs in the treatment of infections . . . .") (site last visited 6/2/08).   See also

http://yourtotalhealth.ivillage.com/allergic-penicillin-amp-sulfa-antibiotics.html

treatment."). Nor is Plaintiff's conclusory allegation that Dana Phillips is unqualified, sufficient to state a claim of deliberate indifference in the face of the fact that he received treatment in the form of doxycycline for a MRSA infection, which is acceptable medical practice. Hence, he has not alleged a sufficiently objective deprivation.

Accordingly, the Complaint against the Medical Defendants should be dismissed for failure to state a claim upon which relief can be granted pursuant to the screening provisions of the PLRA.[12]

Given that all of the federal claims against all of the defendants should be dismissed, the District Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. See, e.g., Bonenberger v. Plymouth Township, 132 F.3d 20, 23 n.1 (3d Cir. 1997) ("where federal claims are dismissed before trial, the district court 'must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'")(quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir.1995)). See also 28 U.S.C. § 1367(c)(3) which permits a district court to "decline to exercise supplemental jurisdiction over a [state law] claim ... if [it] has dismissed all claims over which it has original jurisdiction...."). Here, the considerations do not provide an affirmative justification for retaining jurisdiction.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, written objections are due by June 19, 2008, in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

---

[12] The Court does not recommend the grant of the Medical Defendants' motion to dismiss because their current motion merely repeats the very same arguments as raised in the earlier motion to dismiss, Dkt. [66], which was denied, Dkt. [93], and nothing has occurred in the interim to render the reasoning of that decision incorrect, nor have the Medical Defendants argued otherwise.

Respectfully submitted,

/s/  *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 2 June, 2008

cc:     The Honorable Gary L. Lancaster
        United States District Judge

        Frederick H. Banks
        05711-068
        FCC Yazoo City
        Unit 2AU
        PO BOX 5000
        Yazoo City, MS 39194


        All counsel of record by Notice of Electronic Filing